887 F.2d 1081
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Justo Enrique JAY, Defendant-Appellant.
 No. 88-5635.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 6, 1989.
Decided Sept. 21, 1989.
Rehearing and Rehearing In Banc Denied Oct. 19, 1989.
 
 Martin G. Weinberg (Oteri, Weinberg & Lawson, Bobby Lee Cook, Cook & Palmour, James F. Wyatt, III, on brief), for appellant.
 Max Oliver Cogburn, Jr., Assistant United States Attorney (Thomas J. Ashcraft, United States Attorney, on brief), for appellee.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Justo Enrique Jay appeals from his convictions of one count of conspiracy to possess with intent to distribute cocaine, 14 counts of possession with intent to distribute and distribution of cocaine, and one count of operating a continuing criminal enterprise (CCE). 21 U.S.C.A. Sec. 846 (West 1981); 21 U.S.C.A. Sec. 841(a)(1) (West 1981); 18 U.S.C.A. Sec. 2 (West 1969); 21 U.S.C.A. Sec. 848 (West 1981 & Supp.1988). Among other contentions, Jay challenges the constitutionality of the CCE indictment and the sufficiency of the evidence for his convictions. He also contends that his sentence of life imprisonment without parole violates the eighth amendment. We affirm Jay's convictions on the 14 substantive counts and on the CCE charge, but vacate his sentence on the conspiracy charge in light of our affirmance of the CCE count.
 
 I.
 
 2
 Jay was indicted on February 2, 1988, in the Western District of North Carolina on the single CCE count. He was subsequently indicted in the same district by a different grand jury on March 9, 1988, for the conspiracy count and the 14 substantive counts.[1] Jay moved for a bill of particulars on the CCE and conspiracy charges and also moved to dismiss the CCE indictment for violations of the fifth and sixth amendments. The government was ordered to file two bills of particulars relating to the CCE charge, the first identifying the five individuals allegedly supervised by Jay and the second specifying the predicate offense and the series of violations intended to be relied upon by the government. In the second bill of particulars, the government stated that it would rely on the 14 substantive counts charged in the March 9 indictment to establish the predicate felony violation and the series of related violations required for conviction under the CCE statute. In addition, the bill of particulars listed other alleged violations on which the government stated that it would "rely generally" to comprise the series of violations. The district court subsequently denied Jay's motion to dismiss the CCE indictment and his motion for an additional bill of particulars. Following a jury trial on the consolidated indictments, Jay was convicted on all counts. He was sentenced to life imprisonment without parole on the CCE conviction and consecutive sentences totalling 115 years on the remaining counts, to be served concurrently with the life sentence.
 
 II.
 
 3
 The fifth amendment provides, in part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." U.S. Const. amend. V. The sixth amendment provides, in part, that the accused has the right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. These guarantees serve two purposes. Russell v. United States, 369 U.S. 749, 763-64 (1962). First, they assure that a defendant has notice of the charges against which he must defend. To this end, an indictment must contain the elements of the offense charged and sufficiently apprise the defendant of the allegations made against him. Second, an indictment serves to protect a defendant from being twice placed in jeopardy for the same offense.
 
 
 4
 Although the February indictment charging Jay with operating a CCE tracked the language of section 848,[2] Jay contends that it violated both the fifth and the sixth amendments by failing to: (1) ensure that the grand jury was presented with sufficient evidence to support a probable cause finding of the crime for which he was tried and (2) provide adequate notice of the charges filed against him. He does not contend that he may be unable to plead double jeopardy to a future prosecution. We find that the February CCE indictment sufficiently informed Jay of the elements of the crime by following the applicable statutory provision.
 
 
 5
 This court has consistently upheld indictments which track the language of the CCE statute. See United States v. Amend, 791 F.2d 1120, 1125 (4th Cir.), cert. denied, 479 U.S. 930 (1986); United States v. Lurz, 666 F.2d 69, 78 (4th Cir.1981), cert. denied, 455 U.S. 1005 (1982). In Amend this court rejected an assertion similar to the one advanced by Jay that an indictment tracking the CCE statute was unconstitutionally vague by failing to specify the five individuals allegedly supervised. The court in Amend also upheld the district court denial of a bill of particulars, noting that the defendant was supplied with sufficient information through the government's open file policy.
 
 
 6
 Although the government did not employ an open file policy here, Jay received adequate notice of the charges against him. Where an indictment sufficiently apprises a defendant of the elements of the offense for which he is charged, a bill of particulars may serve to provide the evidentiary details. United States v. American Waste Fibers Co., 809 F.2d 1044, 1047 (4th Cir.1987). Jay was furnished with two bills of particulars which informed him of the five persons he allegedly managed and of the predicate offenses relied upon by the government. See United States v. Sperling, 506 F.2d 1323, 1344-45 (2d Cir.1974), cert. denied, 420 U.S. 962 (1975). In these bills of particulars, the government notified Jay that it intended to rely on the substantive counts charged in the subsequent indictment and other specified violations to form the basis of the series of violations necessary for a CCE conviction.
 
 
 7
 Jay also asserts that the proof at trial represented a constructive amendment of the indictment, necessitating reversal. To the contrary, the proof at trial corresponded to the information supplied by the government in the bills of particulars.
 
 
 8
 A constructive amendment of an indictment occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." United States v. Hathaway, 798 F.2d 902, 910 (6th Cir.1986). In contrast, a mere variance arising from the presentation of different evidence at trial which does not alter the crime charged in the indictment normally does not affect a defendant's substantial rights. Here, Jay was convicted of the CCE charge set forth in the indictment and, at most, this charge was constructively narrowed at trial and did not prejudice his defense. United States v. Miller, 471 U.S. 130, 140 (1985).
 
 III.
 
 9
 Jay also challenges the sufficiency of the evidence on the 14 substantive counts of distribution and possession with intent to distribute cocaine, and the CCE count. Viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), we find that the evidence was sufficient for a rational jury to find Jay guilty of the offenses charged.
 
 
 10
 To obtain convictions under section 841, the government was required to prove that Jay knowingly or intentionally distributed or possessed with intent to distribute a controlled substance. 21 U.S.C.A. Sec. 841(a)(1); 18 U.S.C.A. Sec. 2; United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984). The CCE conviction required proof of five elements, including that Jay committed a felony narcotics violation as part of a continuing series of three related violations.[3] 21 U.S.C.A. Sec. 848; Lurz, 666 F.2d at 75; Amend, 791 F.2d at 1126. These violations must have been in concert with five or more persons supervised by Jay and he must have derived substantial income from these violations. Lurz, 666 F.2d at 75.
 
 
 11
 The evidence presented at trial established that Jay was one of the leaders of a major drug distribution network operating on the eastern coast of the United States from as early as 1979 and continuing through 1984. The government offered the testimony of several cooperating witnesses who were involved in the elaborate operation. Prior to Jay's trial, at least two of these individuals had entered guilty pleas to operating continuing criminal enterprises. The testimony of these witnesses demonstrates that Jay, along with his partner Fernando Lopez, supplied these witnesses and others with cocaine in Miami, Florida for transportation to Charlotte, North Carolina and other areas on the east coast.
 
 
 12
 While much of the evidence presented involved transactions which occurred beyond the statute of limitations,[4] when viewed in the light most favorable to the government, there was sufficient evidence upon which the jury could have found Jay guilty of the substantive acts committed within the statute of limitations period. The jury was carefully instructed that it could not find Jay guilty of the substantive counts charged unless it found "beyond a reasonable doubt that he possessed cocaine with intent to distribute or that he distributed cocaine or that he aided and abetted the possession or distribution of cocaine in the Western District of North Carolina after March 9, 1983." And on the CCE charge, the jury was properly instructed that Jay must have been engaged in the continuing criminal enterprise within five years of the indictment.
 
 IV.
 
 13
 Jay further contends that his sentence of life imprisonment without parole constitutes cruel and unusual punishment pursuant to the eighth amendment. U.S. Const. amend. VIII. This court held in United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir.1985), cert. denied, 476 U.S. 1182 (1986), that a proportionality review must be conducted in all cases involving sentences of life imprisonment without parole. In Solem v. Helm, 463 U.S. 277 (1983), the Supreme Court provided a three-part test for conducting a proportionality review under the eighth amendment. Pursuant to this analysis, the court must consider "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292.
 
 
 14
 In determining whether the sentence imposed here is within constitutional limits, we give substantial deference to the congressional enactment of this statutory penalty and also to the sentencing court. Id. at 290. We also note that the Supreme Court in Solem asserted that successful proportionality challenges in non-capital cases would be exceedingly rare. Id. at 289-90.
 
 
 15
 Although we recognize that the sentence imposed upon Jay is the maximum provided by statute, we do not hesitate to conclude that the sentence is constitutional under the Solem analysis. The offense for which Jay was convicted was sufficiently grave to warrant a life sentence. And the life sentence is proportional to the sentences of other convicted major distributors of narcotics in this jurisdiction and in others. See United States v. Porter, 821 F.2d 968 (4th Cir.1987), cert. denied, 99 L.Ed.2d 269 (1988) (75-year sentence); United States v. Stewart, 820 F.2d 1107 (9th Cir.), cert. denied, 98 L.Ed.2d 144 (1987) (life sentence).
 
 V.
 
 16
 Jay's remaining assignments of error are without merit and need not be addressed in detail. Included in these allegations are the claims that there was insufficient evidence to establish proper venue in the Western District of North Carolina and that the court erred in its instructions to the jury. Jay also alleges that the district court erred in allowing into evidence a driver's license which showed that Jay used an alias and connected him to property owned by his partner Lopez. His last allegation that the government prejudicially proved two conspiracies is equally without merit.
 
 VI.
 
 17
 In addition to being sentenced to life imprisonment without parole on the CCE charge, Jay was also sentenced to 10 years on his conspiracy conviction. Since we affirm the CCE conviction, we vacate the conspiracy sentence. Lurz, 666 F.2d at 81.
 
 
 18
 AFFIRMED in part; VACATED in part.
 
 
 
 [1]
 This indictment also contained unrelated counts which were subsequently dismissed. Jay was indicted a third time on June 8, 1988, on four additional counts of possessing cocaine with intent to distribute. This indictment was dismissed on the government's motion prior to trial
 
 
 [2]
 The indictment charged:
 That from in or about the fall of 1978 and continuing thereafter up to and including the fall of 1984, in the Western District of North Carolina, and elsewhere, the defendant,
 JUSTO ENRIQUE JAY
 knowingly, wilfully and intentionally did engage in a continuing criminal enterprise, in that he violated Title 21, United States Code, Section 841, 846, 952 and 963 by doing, causing, facilitating, and aiding and abetting the importation, possession with intent to distribute, and distribution of cocaine, a Schedule II narcotic controlled substance, and which violations were a part of a continuing series of violations undertaken by defendant, JUSTO ENRIQUE JAY, in concert with at least five other persons with respect to whom defendant, JUSTO ENRIQUE JAY, occupied a position of organizer, a supervisory position, and position of management, and from which defendant, JUSTO ENRIQUE JAY, obtained substantial income and resources in violation of Title 21, United States Code, Section 848.
 
 
 [3]
 We decline to adopt Jay's position that the jury is required to unanimously agree upon the violations comprising the series. See United States v. Bond, 847 F.2d 1233, 1237 (7th Cir.1988); United States v. Tarvers, 833 F.2d 1068, 1074 (1st Cir.1987); but see United States v. Echeverri, 854 F.2d 638 (3d Cir.1988)
 
 
 [4]
 The 14 substantive counts charged in the second indictment, for which Jay was convicted, all occurred within the statute of limitations. Several of the other violations listed in the second bill of particulars and presented at trial occurred beyond the statute of limitations